**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| DYNAENERGETICS EUROPE GMBH, and | ) | |
| DYNAENERGETICS US, INC., | ) | |
| | ) | Civil Action No: 6:20-cv-00069-ADA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| HUNTING TITAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFFS' MOTION TO DISMISS AND STRIKE DEFENDANT'S**
**COUNTERCLAIM AND AFFIRMATIVE DEFENSE FOR**
**<u>UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT</u>**

**TABLE OF CONTENTS**

I.      FACTUAL BACKGROUND ................................................................................ 2

        A.      The Subject Matter of the '422 Patent is Wholly Unrelated to the '161
                Patent, and the IPR is Immaterial to its Validity. .................................... 3

        B.      The IPR Materials and "Key" Prior Art Were Cited, and the IPR Final
                Written Decision is Immaterial to Key Limitations of the '938 Patent. ................. 5

II.     LEGAL STANDARDS ..................................................................................... 6

III.    ARGUMENT ............................................................................................. 8

        A.      Defendant Fails to Allege Sufficient Facts Demonstrating the But-For
                Materiality of the IPR Final Written Decision ........................................ 8

        B.      Defendant Also Fails to Allege Sufficient Facts Supporting a Reasonable
                Inference of Deceptive Intent ........................................................ 11

IV.     CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Aevoe Corp. v. AE Tech. Co., Ltd.*,
　No. 2:12-cv-00053-GMN-NJK, 2013 WL 876036 (D. Nev. Mar. 7, 2013) ...................... 9

*Affinity Labs of TX, LLC v. Netflix, Inc.*,
　No. 15-cv-849-RP, Dkt. 44 (W.D. Tex. Aug. 22, 2016) .......................................... 7, 8, 11

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................................................................ 8

*Burlington Indus., Inc. v. Dayco Corp.*,
　849 F.2d 1418 (Fed. Cir. 1988) ......................................................................................... 1

*Cabin Foods, LLC v. Rich Products Corp.*,
　No. EP–11–CV–318–KC, 2012 WL 433115 (W.D. Tex. Feb. 8, 2012) ........................... 8

*Cinel v. Connick*,
　15 F.3d 1338 n.6 (5th Cir. 1994) ....................................................................................... 3

*Datascape Ltd. v. Dell Technologies, Inc.*,
　No. 1:19-CV-00605-ADA, 2019 WL 5275533 (W.D. Tex. June 17, 2019) ................... 11

*Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
　No. 6:10-CV-379-LED-JDL, 2011 WL 13134896 (E.D. Tex. Dec. 13, 2011) ................. 7

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
　575 F.3d 1312 (Fed. Cir. 2009) .............................................................................. passim

*FMC Corp. v. Manitowoc Co.*,
　835 F.2d 1411 (Fed. Cir. 1987) ......................................................................................... 8

*Hunting Titan, Inc. v. DynaEnergetics GmbH & Co. KG*,
　Case IPR2018-00660, Paper 46 (Nov. 7, 2019 PTAB) ..................................................... 2

*In re Katrina Canal Breaches Litig.*,
　495 F.3d 191 (5th Cir. 2007) ............................................................................................. 8

*Invista North America S.à.r.l. et al. v. M&G USA Corporation et al.*,
　No. 11-1007, 2013 U.S. Dist. LEXIS 77685 (D. Del. May 3, 2013) ........................... 9, 10

*Kimberly-Clark Corp. v. Johnson & Johnson*,
　745 F.2d 1437 (Fed. Cir. 1984) ......................................................................................... 1

*Polaris Indus. v. Arctic Cat, Inc.*,
　No. 14-3412 (JRT/FLN), 2015 U.S. Dist. LEXIS 102529 (D. Minn. Aug. 4,
　2015) ................................................................................................................................. 11

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*,

    537 F. 3d 1357 (Fed. Cir. 2008) ....................................................................... 7

*Therasense, Inc. v. Becton, Dickinson & Co.*,

    649 F.3d 1276 (Fed. Cir. 2011) ............................................................... 1, 4, 6, 7

*Wisconsin Alumni Research Found. v. Apple Inc.*,

    No. 3:14-cv-00062, 2014 U.S. Dist. LEXIS 174024 (W.D. Wis. Dec. 17, 2014) .............. 8

**Rules and Regulations**

37 C.F.R. § 1.97(h) ................................................................................................ 13

Rule 12(b)(6) .................................................................................................... 1, 8

Rule 12(f) ............................................................................................................. 1

Rule 9(b) .................................................................................................... passim

The Court of Appeals for the Federal Circuit has repeatedly denounced claims for inequitable conduct as a "plague" and a "common litigation tactic" that "is cluttering up the patent system." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011); *see also Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed. Cir. 1984) (internal quotation marks omitted) ("Fraud in the PTO has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system."); *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps."). Defendant and Counterclaim Plaintiff Hunting Titan, Inc. ("Defendant") is contributing to this "plague" with its specious inequitable conduct defense and counterclaim.

In its Answer and Counterclaims (Dkt. 22), Defendant has failed to allege facts sufficient to meet the heightened pleading standard of Federal Rule of Civil Procedure ("Rule") 9(b) for inequitable conduct. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). As set forth below, Defendant's conclusory allegations neither show but-for materiality of the undisclosed IPR2018-00600 Final Written Decision, nor do they support a reasonable inference of deceptive intent. Accordingly, Plaintiffs and Counterclaim Defendants DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics" or "Plaintiffs") respectfully move to dismiss Defendant's Third Counterclaim for Declaratory Judgment of Unenforceability pursuant to Rule 12(b)(6) with prejudice and to strike Defendant's Fourth Affirmative Defense pursuant to Rule 12(f).

## I.   FACTUAL BACKGROUND

DynaEnergetics' Amended Complaint alleges infringement by Defendant of U.S. Patent Nos. 10,429,161 (the "'161 Patent") and 10,472,938 (the "'938 Patent") (collectively, the "Patents-in-Suit").   The '161 Patent and the '938 Patent belong to the same patent family—they claim priority to the same application but protect patentably distinct inventions.  *See* Dkts. 20-1, 20-2.

Defendant's Fourth Affirmative Defense and Third Counterclaim, at issue here, are identical and raise inequitable conduct claims against the Patents-in-Suit.  *See* Dkt. 22 ¶¶ 47–101, 132–187.   Defendant generally alleges misconduct resulting from nondisclosure of the Final Written Decision in IPR2018-00600 ("the IPR") regarding U.S. Patent No. 9,581,422 (the "'422 Patent") during prosecution of the Patents-in-Suit.   The '422 Patent is also assigned to DynaEnergetics but belongs to a different patent family, has a different specification, and claims patentably distinct inventions from the Patents-in-Suit.   On February 16, 2018, Defendant filed a Petition seeking *inter partes* review of the '422 Patent.   The PTAB instituted the IPR on August 21, 2018 and issued a Final Written Decision invalidating the claims of the '422 Patent on August 20, 2019.[1]  Dkt. 22 ¶¶ 59, 69, 145, 155.   Defendant alleges that the following prior art references were "key piece[s] of prior art in IPR2018-00600" and are also "material to the patentability of the claims of the '161 and '938 Patents": U.S. Patent No. 9,689,223 (Schacherer) and U.S. Patent No. 9,080,433 (Lanclos).  *Id.* ¶¶ 56, 58, 71-72, 142, 144, 157-158.

---

[1] DynaEnergetics is challenging the IPR Final Written Decision.  On November 7, 2019, the PTAB Precedential Opinion Panel ("POP") granted review of the Final Written Decision—at that time only the fourth case the POP had decided to take.  *See Hunting Titan, Inc. v. DynaEnergetics GmbH & Co. KG*, Case IPR2018-00660, Paper 46 (Nov. 7, 2019 PTAB).  The parties submitted briefing, as did *amicus curiae*, and a hearing was held before the POP on February 18, 2020.  The POP has not yet issued an opinion.

A. **The Subject Matter of the '422 Patent is Wholly Unrelated to the '161 Patent, and the IPR is Immaterial to its Validity.**

The '161 Patent issued from Application No. 15/617,344, filed June 8, 2017.  During prosecution, on March 14, 2018, DynaEnergetics submitted an IDS disclosing U.S. Publication 2012/0247769 ("Schacherer publication"), the publication of the application leading to Schacherer.  Dkt. 22 ¶¶ 52, 138.  DynaEnergetics received a Notice of Allowance on March 25, 2019, and the '161 Patent issued on October 1, 2019, identifying the Schacherer publication as one of the References Cited.  Dkt. 20-1 at 3.

A comparison of independent claim 20 of the '161 Patent (asserted against Defendant) and independent claim 1 of the '422 Patent (and the proposed amendment considered in the IPR) reveals the unrelated scope of the two patents.  The <mark>yellow</mark> highlighting refers to the limitations identified in Affirmative Defense ¶ 93 and Counterclaim ¶ 179 with respect to both the '161 Patent and the '422 Patent.  Notably, the routine claim terms "within the gun carrier," "in the gun carrier," and "in the perforating gun system" were never at issue with respect to patentability during prosecution of the '161 Patent.  *See* Ex. A, 1/23/2019 Office Action (the Examiner's only office action during prosecution).[2]  The <mark>red</mark> highlighting, by contrast, refers to limitations of the '422 patent identified in Affirmative Defense ¶¶ 94-96 and Counterclaim ¶¶ 180-182, <u>which are absent from the '161 Patent</u>.[3]  As set forth below, *infra* § III.A, this substantial difference in scope renders Defendant's conclusory allegations regarding but-for materiality unsubstantiated and meritless.  The challenges to the '422 Patent in the IPR are immaterial to validity of the '161 Patent.  Indeed, Defendant's nonsensical allegations would have any two patents in the world with overlapping

---

[2]  "In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

[3]  Notably, there are many other limitations in the '422 Patent that are not found in the '161 Patent, but this table simply highlights limitations specifically called out by Defendant.

words to require citation of *all* prior art in *all* prosecutions of such patents.  This would result in

an absurd flooding and overburdening of the Patent Office that is not contemplated by any statute,

rule, or law.  *See Therasense*, 649 F.3d at 1289–91 (raising the standards for intent and materiality

in part in response to the "problem of overdisclosure of marginally relevant prior art to the PTO,"

finding that "[t]his flood of information" strains PTO resources).

| '161 Patent | '422 Patent |
|---|---|
| 20. A perforation gun system comprising:<br><br>a gun carrier;<br><br>a first connector for providing energetic coupling between a detonator and a detonation cord, the first connector positioned in the gun carrier; and<br><br>at least one second connector positioned in the gun carrier spaced apart from the first connector, wherein the second connector is configured for terminating the detonation cord in the perforation gun system,<br><br>wherein at least one of the first and second connectors receive electrical connections therethrough. | 1. A wireless detonator assembly configured for being electrically contactably received within a perforating gun assembly without using a wired electrical connection, comprising:<br><br>a shell configured for housing components of the detonator assembly;<br><br>more than one electrical contact component, wherein at least one of the electrical contact components extends from the shell and further wherein the electrical contact component comprises an electrically contactable line-in portion, an electrically contactable line-out portion and an electrically contactable ground portion, the ground portion in combination with the line-in portion and the line-out portion being configured to replace the wired electrical connection to complete an electrical connection merely by contact;<br><br>an insulator positioned between the line-in portion and the line-out portion, wherein the insulator electrically isolates the line-in portion from the line-out portion; and<br><br>means for selective detonation housed within the shell, [and]<br><br>wherein the detonator assembly is configured for electrically contactably forming the electrical connection merely by the contact.<br><br>**'422 Patent Amended**:  Adds the following limitations:<br><br>(1) "a perforating gun housing;"<br><br>(2) "a carrying device positioned within the perforating gun housing to hold at least one shaped charge," and<br><br>(3) "a detonator assembly contained entirely within the perforating gun housing." |

**B.    The IPR Materials and "Key" Prior Art Were Cited, and the IPR Final Written Decision is Immaterial to Key Limitations of the '938 Patent.**

The '938 Patent issued from Application No. 16/359,540, filed March 20, 2019.  On March 20, 2019, DynaEnergetics disclosed to the Examiner **both Schacherer and Lanclos**.  Ex. B, 3/20/19 IDS, at 4, 9-10; Dkt. 22 ¶¶ 65, 151.  Shortly thereafter, on March 25, 2019, DynaEnergetics disclosed the following materials from the IPR:  Defendant's IPR Petition, DynaEnergetics' Patent Owner Response, DynaEnergetics' Motion to Amend, and the PTAB Institution Decision.  Ex. C, 3/25/19 IDS, at 4; Dkt. 22 ¶¶ 66, 152.  On May 3, 2019, the Examiner issued an Office Action indicating that dependent claims 6 and 17 of the application would be allowable if rewritten in independent form, reasoning:

> Regarding claim 6 [an apparatus claim], the prior art fails to anticipate or make obvious (in the context of the pertinent claims) wherein at least a portion of the bulkhead is contained within a tandem seal adapter, and the wireless ground portion is in wireless electrical contact with the tandem seal adapter. Schacherer is considered to [*sic*] most relevant known prior art who discloses a bulkhead 84 that is contained within an outer housing 26 of the perforating gun and there is no disclosure of the outer housing 26 in electrical contact with the wireless ground portion 46.

> Regarding claim 17 [a method claim], the prior art fails to anticipate or make obvious (in the context of the pertinent claims) performing steps (a), (c), and (d) is performed before transporting the perforation gun system, and step (b) is performed at the wellbore site. Schacherer is considered to most relevant known prior art who discloses performing the claimed steps (including step (b)) prior to transporting to the wellbore site (3:45-58).

Ex. D, 5/3/19 Non-Final Rejection, at 11 (emphasis added).  The Examiner had applied Schacherer to the claims as filed and had found that <u>Schacherer did not disclose the allowable subject matter</u>. *Id*.  DynaEnergetics amended the claims (accepting the Examiner's finding that dependent claims would be allowable if rewritten in independent form) and received a Notice of Allowance on September 11, 2019, and the '938 Patent issued on November 12, 2019.  The extensive References

Cited on the face of the '938 Patent include Schacherer, Lanclos, and the IPR materials submitted by DynaEnergetics in March 2019.  Dkt. 20-2 at 3-4.

Defendant's inequitable conduct claim wholly ignores the key limitations that the Examiner found distinguish the '938 Patent claims from Schacherer.  Namely, with respect to independent apparatus claims 1 and 9 of the '938 Patent, Defendant ignores the key limitations "wherein at least a portion of the bulkhead is contained within a tandem seal adapter, and the wireless ground portion is in wireless electrical contact with the tandem seal adapter," and with respect to independent method claim 13, Defendant ignores the limitation requiring inserting a detonator into the top connector at the wellbore site.  Defendant's pleading is silent as to where and how those claim limitations are present in any aspect of the IPR, including the Final Written Decision, and this silence speaks volumes.  Defendant's allegations regarding the particular limitations addressed in the IPR Final Written Decision (Dkt. 22 ¶¶ 93-96, 179-182) are unrelated to the reason the claims of the '938 Patent were allowed.

As set forth below, Defendant has not alleged facts sufficient to support but-for materiality.  Nor has Defendant alleged sufficient facts to support a reasonable inference that the named individuals intended to deceive the PTO, as required by the heightened pleading standard for inequitable conduct.

## II.   LEGAL STANDARDS

"[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague" on "not only the courts but also the entire patent system."  *Therasense*, 649 F.3d at 1289.  In an effort to curb the abusive use of this defense, the Federal Circuit has raised the bar for (1) <u>proving</u> inequitable conduct, *id.* at 1290; and (2) <u>pleading</u> inequitable conduct, *see Exergen*, 575 F.3d at 1326-27.

To <u>prove</u> inequitable conduct, a defendant must show both: (1) that the patentee either made a material misrepresentation or withheld material information from the PTO, and (2) that the patentee did so with the specific intent to deceive the PTO.  *Therasense*, 649 F.3d 1276 at 1287. The materiality required to establish inequitable conduct is "but-for materiality," that is, "the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference," *Therasense*, 649 F.3d at 1291; the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence," *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F. 3d 1357, 1366 (Fed. Cir. 2008) (citations omitted).

To <u>plead</u> inequitable conduct, a defendant must meet the heightened pleading standards of Rule 9(b) and set forth the "particularized factual bases" underlying the claim of inequitable conduct.  *Exergen*, 575 F.3d at 1327 (affirming denial of motion for leave to allege inequitable conduct).  "A pleading that simply avers the substantive elements of inequitable conduct . . . does not satisfy Rule 9(b)."  *Exergen Corp.*, 575 F. 3d at 1326-27.  Rather, an inequitable conduct pleading must detail the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Id.*  Further, the but-for materiality required to prove inequitable conduct informs the pleading standard—an assertion of inequitable conduct must plead facts showing but-for materiality.  *See* Ex. E, *Affinity Labs of TX, LLC v. Netflix, Inc.*, No. 15-cv-849-RP, Dkt. 44 at 7 (W.D. Tex. Aug. 22, 2016) (granting motion to dismiss where defendant "failed to properly allege <u>but-for</u> materiality") (emphasis added); *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *3 (E.D. Tex. Dec. 13, 2011) (noting that "a pleading that does not show but-for materiality . . . would be [*sic*] not survive the pleading stage").  Moreover, regarding intent, the pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of

the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.

When reviewing a Rule 12(b)(6) motion, the court determines whether a party has stated a legally cognizable claim when all well-pleaded facts are (1) assumed true and (2) are viewed in a light most favorable to the complainant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A motion to strike may . . . be granted when a defense that is subject to the heightened pleading standard of Rule 9(b) fails to meet Rule 9(b)'s requirements." *Cabin Foods, LLC v. Rich Products Corp.*, No. EP–11–CV–318–KC, 2012 WL 433115, at *2 (W.D. Tex. Feb. 8, 2012). As set forth below, Defendant's threadbare allegations of inequitable conduct fail to set forth factual bases for both the "but-for" materiality and the specific intent elements of inequitable conducts, and do not meet the heightened pleading standard required by Rule 9(b). Thus, Defendant's inequitable conduct claim should be dismissed and its affirmative defense stricken, "lest inequitable conduct devolve into 'a magic incantation to be asserted against every patentee.'" *Exergen*, 575 F.3d at 1331 (quoting *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)).

## III.   ARGUMENT

### A.   Defendant Fails to Allege Sufficient Facts Demonstrating the But-For Materiality of the IPR Final Written Decision.

Defendant is required to plead sufficient facts demonstrating but-for materiality of the IPR Final Written Decision. *See* Ex. E, *Affinity Labs of TX*, Dkt. 44 at 7; *see also Wisconsin Alumni Research Found. v. Apple Inc.*, No. 3:14-cv-00062, 2014 U.S. Dist. LEXIS 174024, at *7-17, 23 (W.D. Wis. Dec. 17, 2014) (denying motion to amend where the allegations fail to adequately plead but-for materiality). "Mere claims that the PTO would not have granted the patent had it known of

the omission or misrepresentation are insufficient because they are conclusory legal conclusions under *Iqbal*." *Invista North America S.à.r.l. et al. v. M&G USA Corporation et al.*, No. 11-1007, 2013 U.S. Dist. LEXIS 77685, at *49 (D. Del. May 3, 2013) (Burke, M.J.) (citation omitted). "Essentially, materiality and but-for causation equate to the 'how' of inequitable conduct pleading; the defendant must 'identify the basis on which the examiner would have rejected' the patent." *Id.* (quoting *Aevoe Corp. v. AE Tech. Co., Ltd.*, No. 2:12-cv-00053-GMN-NJK, 2013 WL 876036, at *8 (D. Nev. Mar. 7, 2013)).  Defendant has failed to meet this standard, and thus, its allegations with respect to but-for materiality are insufficient as a matter of law.

First, Defendant has pled no facts demonstrating that the IPR Final Written Decision is but-for material to any claims of the '161 Patent.  Defendant's statement that "[t]he Examiners would not have allowed the '161 or '938 Patent to issue if they had reviewed the August 21, 2019 Final Written Decision in IPR2018-00600" (Dkt. 22 ¶¶ 91, 177) is insufficient.  *See Invista*, 2013 U.S. Dist. LEXIS 77685, at *49.  The only allegation purporting to support but-for materiality with respect to the '161 Patent is Defendant's statement that the IPR Final Written Decision discussed Schacherer's teachings regarding components "entirely within the perforating gun housing," which discussion is supposedly material to the '161 Patent claim terms "within the gun carrier," "in the gun carrier," and "in the perforating gun system." Dkt. 22 ¶¶ 93, 179.  But, as demonstrated above, *supra* § I.A, the claims of the '161 Patent and the '422 Patent are <u>completely</u> unrelated in scope, and the patents belong to different patent families and, as such, have different specifications. Defendant has not offered any basis on which the Examiner would have rejected the '161 Patent based on the IPR Final Written Decision, especially in view of the myriad unaddressed differences between the claims of the '161 Patent and the '422 Patent.  Moreover, the Examiner already considered the Schacherer publication during prosecution of the '161 Patent and allowed the '161

Patent to issue.  In fact, the claim terms "within the gun carrier," "in the gun carrier," and "in the perforating gun system" were never at issue with respect to patentability during prosecution of the '161 Patent.  *Supra* § I.A.  Thus, Defendant has provided no explanation regarding the "how" of inequitable conduct pleading.  *See Invista*, 2013 U.S. Dist. LEXIS 77685, at *49.  Defendant's conclusory allegations with respect to one claim element of the '161 Patent are insufficient to serve as a foundation for but-for materiality.

Second, Defendant did not plead facts showing that the IPR Final Written Decision is but-for material to any claims of the '938 Patent.  The '938 Patent and the '422 Patent likewise belong to different patent families and, as such, have different specifications.  Defendant's allegations purporting to support but-for materiality based on the IPR Final Written Decision's discussion of Schacherer (*see* Dkt. 22 ¶¶ 93-96, 179-182) omit any discussion of the limitations the Examiner found rendered the '938 Patent patentable over Schacherer: the limitations of claims 1 and 9 "wherein at least a portion of the bulkhead is contained within a tandem seal adapter, and the wireless ground portion is in wireless electrical contact with the tandem seal adapter," and the limitation of claim 13 requiring inserting a detonator into the top connector at the wellbore site. *Supra* § I.B.  Accordingly, none of the Defendant's allegations (limited to other claim elements of the '938 Patent) would have created a prima facie case of unpatentability of the '938 Patent. Defendant has not provided an explanation regarding the "how" of inequitable conduct pleading, *see Invista*, 2013 U.S. Dist. LEXIS 77685, at *49, and Defendant's conclusory allegations which ignore allowable subject matter of the '938 Patent are insufficient to show but-for materiality.

Moreover, Defendant did not plead facts showing that the IPR Final Written Decision is but-for material to any claims of the '938 Patent because DynaEnergetics had already disclosed to the Examiner other materials from IPR, including the "key piece[s] of prior art in IPR2018-00600,"

Schacherer and Lanclos.  *See supra* § I.B.  It is undisputed from the face of the '938 Patent that the PTO (1) knew about the IPR proceeding; (2) considered both Schacherer and Lanclos; and (3) considered Defendant's IPR Petition, DynaEnergetics' Patent Owner Response, DynaEnergetics' Motion to Amend, and the PTAB Institution Decision, which constitute interpretation of the teachings of Schacherer and Lanclos.  *See supra* § I.B.  In fact, the entire IPR proceeding and record was readily available to the Examiner.  In essence, Defendant is alleging that although DynaEnergetics submitted the "key" prior art as well as the parties' arguments regarding the same and the PTAB's Institution Decision, that the Examiner would not have issued the '938 Patent (unrelated to the '422 Patent) had DynaEnergetics submitted the PTAB's Final Written Decision. Defendant's allegations are therefore spurious and cannot give rise to a reasonable inference of but-for materiality.  *See* Ex. E, *Affinity Labs of TX*, Dkt. 44 at 5-7; *see also Polaris Indus. v. Arctic Cat, Inc.*, No. 14-3412 (JRT/FLN), 2015 U.S. Dist. LEXIS 102529, at *14-15 (D. Minn. Aug. 4, 2015) (dismissing inequitable conduct allegations based on IPR petition because underlying prior art at issue in IPR was in front of examiner during prosecution).[4]

For at least these reasons, Defendant has failed to plead but-for materiality, as required to satisfy the heightened pleading standards of Rule 9(b).

**B.    Defendant Also Fails to Allege Sufficient Facts Supporting a Reasonable Inference of Deceptive Intent.**

Defendant has also failed to plead sufficient facts—even if accepted as true—demonstrating that the five named individuals withheld the IPR Final Written Decision during

---

[4] The facts of this case are significantly different than those presented in *Datascape Ltd. v. Dell Technologies, Inc.*, in which this Court denied the plaintiff's motion to dismiss Dell's inequitable conduct counterclaim.  No. 1:19-CV-00605-ADA, 2019 WL 5275533 (W.D. Tex. June 17, 2019). There, a non-practicing entity acquired two patent families (among others) from Sony that claimed "essentially the same subject matter," and yet failed to cite one of the families and the art cited therein in the family that was still pending in prosecution. *Id.* at *2.

prosecution of the Patents-in-Suit with the specific intent to deceive the PTO. *See Exergen,* 575 F.3d at 1328-29.

Defendant broadly alleges: "On information and belief, Lisa J. Moyles, Jason M. Rockman, Caroline Mrohs, Janelle A. O'Neill . . . and Ian Grieves intentionally withheld the August 21, 2019 Final Written Decision in IPR2018-00600 from the Examiners for the '161 and '938 Patents with intent to deceive them about the teachings of the relevant art and decisions of the Patent Trial and Appeal Board so that unduly broad claims would issue." Dkt. 22 ¶¶ 97, 183 (emphasis added); *see also id.* ¶¶ 101, 187. However, "[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330-31 (emphasis added). To properly plead inequitable conduct, Defendant must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1327 (emphasis added). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1328-29, n.5 (emphasis added) (citations omitted). Moreover, mere failure to disclose is not enough to meet the threshold of deceptive intent required to support an allegation of inequitable conduct. *See Exergen*, 575 F.3d at 1331.

Here, the only underlying facts Defendant alleges to support its "belief" that the named individuals acted with deceptive intent are: (1) the named individuals "knew the close relationship of the subject matter of the '422 Patent and the '161 and '938 Patents while they were actively involved in prosecution of the IPR and the applications resulting in the '161 and '938 Patents" (Dkt. 22 ¶¶ 98, 184); (2) "they knew the Final Written Decision discussed nearly identical claim limitations" (*id.* ¶¶ 99, 185); and (3) "they disclosed some, but not all materials from IPR2018-

00600, including the most valuable Final Written Decision" (*id.* ¶¶ 100, 186).  These allegations are insufficient.

With respect to both Patents-in-Suit, there is no support for Defendant's conclusory allegation that DynaEnergetics "knew of the close relationship of the subject matter of the '422 Patent and the '161 and '938 Patents" and "knew the Final Written Decision discussed nearly identical claim limitations."  Dkt. 22 ¶¶ 98-99, 184-185.  As discussed above, the '422 Patent and the Patents-in-Suit are not "related"—they do not claim priority to the same application and are not in the same patent family.  *See supra* § III.A.  And, Defendant's allegations regarding the IPR Final Written Decision do not discuss the key limitations that the Examiner found distinguish the '938 Patent claims from Schacherer or most of the limitations of the '161 Patent (as shown in the chart above, *supra* § I.A).  *See supra* § III.A; *see also* Dkt. 22 ¶¶ 93-96, 179-182.  Further, Defendant's assertion that DynaEnergetics "knew that IPR2018-00600 was material to the claims at issue" based on IDS submissions of certain IPR materials (Dkt. 22 ¶¶ 54, 68, 140, 154) is contrary to the PTO rules for IDS submissions.  37 C.F.R. § 1.97(h) expressly states that "[t]he filing of an information disclosure statement shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b)."  Thus, it is not "reasonable to infer" that DynaEnergetics intended to deceive the Examiner by not disclosing the IPR Final Written Decision regarding a patent in a different family and discussing claim language unrelated to at least the allowable (over the "key" references) subject matter in the '161 and '938 Patents.

Further, with respect to the '938 Patent, DynaEnergetics did disclose the IPR Petition, Patent Owner Preliminary Response, Patent Owner's Motion to Amend, and the Institution Decision, as well as the "key" underlying references (Schacherer and Lanclos) in March 2019,

well before the IPR Final Written Decision issued on August 20, 2019.  Ex. B, 3/20/19 IDS, at 4, 9-10; Ex. C, 3/25/19 IDS, at 4; Dkt. 22 ¶¶ 65-66, 151-152.  As set forth above, it is undisputed from the face of the '938 Patent that the PTO knew about the IPR proceeding, considered both Schacherer and Lanclos, and had the entire IPR proceeding and record readily available. DynaEnergetics' disclosure of the underlying materials is an "objective indication[] of candor and good faith."  It is not "reasonable to infer" that DynaEnergetics intended to deceive the Examiner— who fully understands what an IPR is—by disclosing multiple IPR-related documents but not the IPR Final Written Decision during prosecution of the '938 Patent.

For at least these reasons, Defendant has failed to plead "specific intent to deceive the PTO," as required to satisfy the heightened pleading standards of Rule 9(b).  *See Exergen*, 575 F.3d at 1329-30.  Defendant's vague allegations of deceptive intent are exactly the type of allegations that *Exergen* prohibits—they do not plausibly suggest a "deliberate decision to withhold a known material reference" and thus result only in "frivolous litigation based on accusations that could hurt the reputations of those being attacked."  *Exergen*, 575 F.3d at 1331 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).  As such, Defendant's inequitable conduct claim should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's inequitable conduct counterclaim and affirmative defense are insufficient as a matter of law.  DynaEnergetics respectfully requests that the Court dismiss the Third Counterclaim and strike the Fourth Affirmative Defense of Defendant's Answer and Counterclaims (Dkt. 22) with prejudice.

Dated: April 8, 2020                                    Respectfully submitted,

                                                       By: */s/Eric H. Findlay*
                                                       Eric H. Findlay

Texas Bar No. 00789886
Roger Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 83402
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Barry J. Herman (admitted *pro hac vice*)
Maryland Federal Bar No. 26061
Julie C. Giardina (admitted *pro hac vice*)
Maryland Federal Bar No. 21085
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

Preston H. Heard (admitted *pro hac vice*)
Georgia Bar No. 476319
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com

Ana J. Friedman (admitted *pro hac vice*)
North Carolina Bar No. 53117
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 747-6622
Email: Ana.Friedman@wbd-us.com

Lisa J. Moyles (admitted *pro hac vice*)
Connecticut State Bar No. 425652
Jason M. Rockman (admitted *pro hac vice*)
New York Bar No. 4450953
MOYLES IP, LLC
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

***Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.***

## **CERTIFICATE OF CONFERENCE**

I hereby certify that, beginning on April 7, 2020, I was in conference with Defendant's counsel regarding the relief sought by this motion, and on April 8, 2020, Defendant's counsel indicated that Defendant is OPPOSED to the relief sought.

/s/Barry J. Herman
Barry J. Herman

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record through the Court's CM/ECF service on this 8th day of April, 2020.

/s/Eric H. Findlay
Eric H. Findlay

17