IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DYNAENERGETICS EUROPE GMBH, and <br><br> DYNAENERGETICS US, INC., <br> Plaintiffs, <br><br> v. <br><br> HUNTING TITAN, INC., <br> Defendant. | § § § § § § § § § § § § | Civil Action No: 6:20-cv-00069 |
| DYNAENERGETICS GMBH & CO. KG, and DYNAENERGETICS US, INC., <br> Plaintiffs, <br><br> v. <br><br> HUNTING TITAN, LTD., HUNTING TITAN, INC., and HUNTING ENERGY SERVICES, INC, <br> Defendants | § § § § § § § § § § § § § | United States District Court for the Southern District of Texas, Houston Division <br> Civil Action No: 4:17-cv-03784 |

**DEFENDANT'S REPLY ON OPPOSED
MOTION TO TRANSFER VENUE**

1

I. **Summary**

The issues in this case overlap substantially with those in the Houston case. All the parties are present in the Houston case. The accused products here are the same as those in the Houston case. The Patents at issue here describe and claim the same subject matter as that in the Houston case. The benefits of efficiency and uniformity favor transfer of this case for potential consolidation with the Houston case. No other factors outweigh these benefits.

II. **The '938 Patent includes claim limitations copied from the Houston case Patent**

The '938 Patent directly incorporates claim limitations from the Houston case's '422 Patent that are not mentioned in the '938 specification. For example, every asserted claim of the '938 Patent includes the word "wireless" (which does not appear anywhere in the '938 specification). However, that term was defined and discussed at length and in the specification and claims of '422 Patent. Dkt. 28-6, 2:24-29, 8:39-54 ("The detonator assembly described herein does away with the wired connection by providing a wirelessly-connectable, selective detonator, more specifically, a detonator configured to be received within a detonator positioning assembly through a wireless connection-that is, without the need to attach wires to the detonator.").

Claim 1 of the '938 Patent also includes limitations of "an outer gun carrier," "a charge holder positioned within the outer gun carrier and including at least one shaped charge," and that the detonator "be contained entirely within the outer gun carrier." Dkt. 20-2, 11:18-21. These limitations are equivalent to the language Plaintiffs tried to add to the '422 Patent during the IPR: "a perforating gun housing," "a carrying device positioned within the perforating gun housing and configured for holding at least one shaped charge; and a wirelessly-connectable selective detonator assembly contained entirely within the perforating gun housing."

In total, seven of ten limitations in '938 claim 1 are in the claims of the '422 Patent in the Houston case as issued or in the proposed amended claims in the IPR. *Compare*, Dkt. 20-2, '938 Patent, 11:16-35, with Dkt. 28-6, '422 Patent, 9:10-31, and Dkt. 28-9, IPR Motion to Amend, p. 27, 36. The additional three elements are standard claim terms that are described in the '422 specification and well known in the art. *Compare*, Dkt. 20-2, '938 Patent, 11:29-35, with Dkt. 28-6, '422 Patent, 6:25-33.

Claim 12 of the '938 Patent is entirely composed of claim limitations that are not mentioned in the '938 specification, but are almost verbatim copied from claim 1 of the '422 Patent as shown below.

| '938 Claim 12 | '938 Specification | '422 Claim 1 |
|---|---|---|
| 12. The modular detonator of claim 9, wherein | | |
| the modular detonator is <u>configured for being electrically contactably received</u> within the gun assembly of the perforating gun system <u>without using a wired electrical connection</u>, and | Not present | A wireless detonator assembly <u>configured for being electrically contactably received</u> within a perforating gun assembly <u>without using a wired electrical connection</u> |
| the wireless signal-in connector, the wireless through-wire connector, and the wireless ground contact connector together are | Not present | The ground portion in combination with the line-in portion and the line-out portion being |
| configured to replace the wired electrical connection and to complete an electrical connection merely by contact. | Not present | configured to replace the wired electrical connection to complete an electrical connection merely by contact |

*Compare* Dkt. 20-2, 12:26-33; and Dkt. 28-6, 8:39-42, 8:50-54.

3

### III.  The '161 Patent has overlapping claim scope with the '422 Patent:

The '161 Patent does not have an "unrelated scope" to the '422 Patent in the Houston case (as Plaintiffs claim). For example, the '161 claimed "first connector" is the same as the '422 claimed "detonator positioning assembly." Figures from the '161 and '422 Patents are identical and show the claimed "detonator positioning device" AKA "first connector":



FIG. 6            FIG. 18

(Dkt. 20-1, Figure 18, Dkt. 28-6, '422 Patent Figure 6). The '422 Patent describes this drawing as "a perspective view of the detonator positioning assembly." (Dkt. 28-6, '422 Patent, 3:9-10). The '161 Patent describes this same drawing as "a rear perspective view of the top connector." (Dkt. 20-1, '161 Patent, 4:21). The '422 Patent claims this "detonator positioning assembly" and the '161 Patent claims this "top connector" as "a first connector." (Dkt. 28-6, '422 Patent, 10:39-52; Dkt. 20-1, '161 Patent, 10:37, 12:43; Dkt. 28-7, 3/11/2019 Response to Office Action, p. 2 (amending "at least one top connector" to "a first connector.").

### IV.  Additional issues

The specification of the '161 and '938 Patents is already at issue in the Houston case. The Houston case Patent incorporates by reference the Canadian Application that the patents in this

case claim priority to.  Dkt. 28-6, '422 Patent, 39-45; Dkt. 20-2, '938 Patent, page 1, 1:7-19. Therefore, the Houston case Patent does not have a materially different specification as Plaintiffs claim.

Six months after revamping their Blum facility, Plaintiffs filed two suits against Defendant in Houston.  On May 2, 2019, Plaintiffs filed a second infringement lawsuit and a suit alleging trade secret misappropriation against Defendant in the Southern District of Texas.  Plaintiffs' claim that the opening of this facility drove their forum decision is not credible. It is also of little relevance in the face of the strong, numerous factors for consolidation into the first-filed case.

Plaintiffs raise the Precedential Opinion Panel (POP) review of the Final Written decision. The POP review is on whether Board can reject amended claims on new grounds *sua sponte*.  Ex. 1, IPR2018-00600, Paper 46, Order Granting Request for POP rehearing.  The Federal Circuit's *Nike* opinion has now answered that question. The Board can.  Ex. 2, *Nike, Inc. v. Adidas AG*, No. 2019-1262, slip op. at 9 (Fed. Cir. Apr. 9, 2020) ("the Board may sua sponte identify a patentability issue for a proposed substitute claim…").

Dated: <u>April 28, 2020</u>

Respectfully submitted,

/s/ Jason A. Saunders
Jason A. Saunders
Texas Bar No.: 24042406
Federal ID No.: 557143
jsaunders@arnold-iplaw.com
Attorney-in-Charge
Arnold & Saunders, LLP
4900 Woodway, Suite 900
Houston, Texas 77056
Telephone: (713) 972-1150

Christopher P. McKeon
Texas Bar No.: 24068904

                Federal ID No.: 1162839
                cmckeon@arnold-iplaw.com

**ATTORNEYS FOR DEFENDANT,
HUNTING TITAN, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that, on April 28, 2020, a true and correct copy of Defendant's Reply On Opposed Motion To Transfer was served on all counsel of record *via CM/ECF*.

/s/ Jason A. Saunders
Jason A. Saunders